## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**BARBARA ANN JOHNSON,**

                      **Plaintiff,**

**v.**                                        **Case No. 3:06cv188/MCR/EMT**

**DONALD C. WINTER,**
**Secretary Department of the Navy,**

                      **Defendant.**

_____/

## ORDER

Plaintiff Barbara Ann Johnson ("plaintiff") sues defendant Donald C. Winter, Secretary Department of the Navy ("defendant"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  Presently before the court is defendant's motion for summary judgment.  For the reasons stated below, the motion is GRANTED.

## FACTUAL HISTORY[1]

Plaintiff is an African-American.  From August 1998 until the present the United States Navy has employed plaintiff at the Naval Education & Training Professional

---

[1] At summary judgment the court must view the facts in the light most favorable to the non-moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. See Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

Development & Technology Center ("NETPDTC") in Pensacola, Florida.  Prior to being assigned to NETPDTC plaintiff was employed by the Navy at the Defense Automated Printing Service ("DAPS") as a management analyst. Her classification was GS-09, series 343 [GS-343-09].  In 1997, while still working at DAPS, plaintiff was temporarily assigned to a GS-11 position.  When this position terminated plaintiff reverted to her permanent GS-343-09 classification.

DAPS was impacted by a reduction in force closure in 1998.  Plaintiff's position was eliminated, resulting in the anticipated termination of her employment with the Navy in August 1998.  Plaintiff was eligible, however, for certain vacant GS series positions and when a position became available through the retirement of another series 343 employee, NETPDTC N6 department manager Don Cook ("Cook") was required to hire plaintiff.  The retiring employee was a GS-13 grade and worked in the N62 department, a division that analyzed computer hardware and software specifications.  Plaintiff was not eligible for the vacated GS-13 position because it was a higher grade than her GS-9 classification. Nevertheless, a position description ("PD") was created to make a vacancy available for which plaintiff met the minimum series and grade qualifications.  The PD created for plaintiff was for an analyst assigned to the N65 department, a computer procurement division.  Plaintiff was placed in the new position effective August 16, 1998, as a GS-343-09.   According to defendant, she performed clerical and administrative type duties. Plaintiff contends that she also performed more technical, computer-related work.

Several years prior to these events, in 1991, the Office of Personnel Management ("OPM") issued new standards for the GS-334 series, a series which applies to computer specialists. In the mid-1990s NETPDTC determined that, based on the assigned duties, skills, and knowledge of the positions, the 343 series GS-11 and GS-12 management analyst PDs should be included in the 334 computer systems analyst series.  Accordingly, NETPDTC rewrote the series 343 series GS-11 and GS-12 PDs and submitted them for review to the Human Resource Office ("HRO"), which confirmed in an advisory statement that the two positions were correctly classified as 334 series.  Subsequently, in March 1996, the two PDs were signed and became official classified positions.  Because there

was no salary increase involved with the reassignment of the PDs to the 334 series, however, NETPDTC did not pursue the paperwork needed to convert its 343 series GS-11 and 12 employees to the information technology "("IT") 334 series at that time.

In 2000 OPM decided to offer incentive pay for positions in the IT field in order to aid in recruitment and retention of trained and skilled IT employees.  OPM also created a new IT classification, series 2210, and authorized the automatic conversion of IT series 334 positions to series 2210, and automatic entitlement to IT pay for GS-334 employees, effective January 2001.  At that time certain NETPDTC's 343 series GS-11 and GS-12 employees performing IT work had not yet been converted to the 334 series PDs. According to plaintiff, when some of the 343 series employees complained that they were also entitled to receive IT pay, their request to be converted to the 334 series and to receive the associated salary increases was granted.  Plaintiff, as a GS-343-09, was not included in this group of employees.

According to defendant, NETPDTC was aware that some of its employees were performing IT work and thought they might be the type of IT employees the new OPM directive sought to recruit and retain.  NETPDTC therefore asked HRO to review the PDs of each of its 343 series employees to determine whether their PDs fit the criteria for the IT series.  Before the PDs were submitted to HRO, each employee – including plaintiff – was required to review his PD and certify that it was correct and accurately described his work.  In May 2001 HRO provided advisory opinions to NETPDTC management on the PDs it had reviewed.  Defendant asserts the advisory opinions were followed and in June 2001, NETPDTC reassigned eligible GS-343-11 and GS-343-12 employees to the 334 IT series and awarded them IT incentive pay.  Plaintiff asserts her name was on a list for reassignment to the IT series but Cook – who for no reason known to her did not like her – removed it and she therefore did not receive incentive pay.  Plaintiff also states that all of the employees on the list who received IT pay worked in the N62 computer analysis division, where she had originally accepted employment, rather than the N65 computer procurement division, where she was instead assigned.  According to defendant, the employees reassigned to the 334 series performed "paramount IT work," such as

designing computer programs or systems, while plaintiff did not. Defendant states that although plaintiff's PD was also reviewed during this process, HRO determined that her PD was properly classified as a GS-343-09, or management analyst. Under HRO's analysis, plaintiff therefore was not eligible for IT incentive pay.

Plaintiff requested her conversion to the IT 2210 series in September 2001 so that she could receive IT pay. Although plaintiff had previously certified the accuracy of her PD, she maintained at that time that in fact it did not correctly describe her work duties and requested permission to rewrite it. Cook authorized plaintiff to review, alter, and resubmit her PD to HRO. According to defendant, in an advisory opinion HRO concluded that plaintiff's revised PD did not include paramount IT work and thus did not fit the criteria for the IT 2210 series. Also, defendant states that Gene Myatt, the N8 department head, held ultimate responsibility for classification decisions, not Cook; plaintiff maintains, however, that it was Cook who continued to deny her eligibility for IT pay. Over the next several months plaintiff and NETPDTC staff rewrote plaintiff's PD several more times in an effort to have it classified as a 2210 series job. Plaintiff asserts that no other employee's PD was scrutinized in the manner hers was. In any event, the efforts eventually were successful, and plaintiff's PD was reclassified to the 2210 series effective May 2002. Her grade remained GS-09. Cook, as required by HRO, signed a waiver that stated plaintiff was "minimally qualified" for the IT position with the IT elements that had been added to her PD. Neither plaintiff nor any of the NETPDTC 343 series employees who were reassigned to the 334 series or who were converted from the 343 series to the 2210 series received retroactive IT pay because, according to defendant, it was not authorized.

In the fall of 2001 one of plaintiff's co-workers, GS-343-12 employee Rachael Cowen ("Cowen"), was temporarily assigned to another position; some of Cowen's duties were reassigned to plaintiff. Plaintiff maintains she took over some of Cowen's technical duties but defendant contends that while Cowen's administrative GS-09 duties were reassigned to plaintiff Cowen's GS-11 and GS-12 duties were reassigned to other GS-11 and GS-12 employees. Another employee, GS-343-11 Linda Blackmon, retired during the

same time frame and some of her duties were also assigned to plaintiff.  In September 2001, asserting that she was required to perform the duties of higher grade employees without being properly compensated and that she had accumulated ten months of service as a GS-11 while working at DAPS, plaintiff sought a promotion to GS-12.  Plaintiff states that Cook unfairly denied her the promotion.  According to defendant, plaintiff was not advanced because she did not have the one year as a GS-11 that is required in order to be promoted to a GS-12.

Plaintiff was a member of the Equal Employment Opportunity ("EEO") committee at NETPDTC at the end of 2001 or early part of 2002.  According to plaintiff, the extent of her activities as a committee member was attending several meetings.  In 2002,  while she was on the committee, plaintiff initiated an EEO complaint in which she alleged she had been subjected to racial discrimination as well as reprisal for her EEO activities through being denied IT incentive pay from June 2001 until May 2002 and a promotion to GS-12.[2]  In March 2006 plaintiff filed a second formal administrative complaint of discrimination, this time alleging a hostile work environment and harassment throughout the period of her employment at NETPDTC.  The parties participated in an alternative dispute resolution session and on March 23, 2006, entered into a settlement agreement regarding plaintiff's hostile work environment and harassment allegations.

**PROCEDURAL HISTORY**

Plaintiff filed the instant employment action pro se on April 28, 2006,  asserting that on the basis of her race defendant denied her incentive pay, refused to promote her, and subjected her to a hostile work environment and harassment.  (Doc.  1).  On December 5, 2006, attorney Cecile M. Scoon entered an appearance on behalf of plaintiff.  Following an unsuccessful mediation attempt by the parties, defendant filed the instant motion for summary judgment, along with a statement of facts and numerous exhibits.  (Docs. 23-25).  The court informed the parties that the motion for summary judgment would be taken under advisement on November 1, 2007.  Plaintiff, through her counsel Ms. Scoon, on October 16, 2007, filed a timely response in opposition. (Doc. 29).  On October 31, 2007, defendant

---

[2]  Plaintiff initially complained of discrimination based on color but later abandoned that claim.

moved to strike the response on the ground it lacked adequately specific citation to the record; alternatively, defendant moved for leave to file a reply to the response.  The next day, November 1, 2007, plaintiff moved to respond to defendant's motion to strike and also moved to strike defendant's statement of facts.  On November 2, 2007, the court granted plaintiff's motion to respond to defendant's motion to strike and granted defendant's alternative motion to file a reply; the court denied both motions to strike.  (Docs.  31, 33, 34).  On November 4, 2007, three days after she had filed the motion and two days after the court had ruled on it, plaintiff filed two notices of filing exhibits in support of her response to defendant's motion to strike/file a reply and her own motion to strike. (Docs. 35, 36).  Plaintiff explained in the notices that the exhibits "were previously uploaded to be filed individually on 1 Nov 2007 but due to the size of all of the exhibits as a group, the filing was not completed."   Both notices explicitly state that the exhibits are in support of plaintiff's response to defendant's motion to strike/file a reply and plaintiff's own motion to strike (on which the court had ruled November 2nd).  The only additional, public docket annotation after November 4, 2007, is one directed to Ms. Scoon from the clerk, instructing her to file responses and motions as separate documents and to use clear, concise titles for pleadings.

**DISCUSSION**

Defendant moves for judgment in his favor on plaintiff's hostile work environment claim asserting the claim is precluded under the EEO settlement agreement or plaintiff failed to exhaust administrative remedies with respect to this claim.   Alternatively, defendant submits that plaintiff has failed to meet her burden of establishing a prima facie case of hostile work environment.  Defendant similarly argues that plaintiff has not made out a prima facie case of racial discrimination with respect to her incentive pay and promotion claims or that even if she has, she has not shown that defendant's actions were a pretext for any type of illegal discrimination.  Finally, defendant submits that plaintiff has failed to establish that she was retaliated against because she engaged in protected activity.

In opposition to defendant's motion for summary judgment plaintiff filed one

document – her response – to which is attached her own affidavit dated October 16, 2007. In addition to citing several of defendant's exhibits and the October 16, 2007, affidavit ("Exhibit A") in the response, plaintiff references five other exhibits ("Exhibits B-F").[3]  None of these exhibits, however, is attached to or has been filed in connection with the summary judgment response.[4]  Also, plaintiff states that in her "Contest of the Statement of Facts Relied Upon in Support of Federal Defendant's Motion for Summary Judgment" she has specifically set out the disputed issues of fact.  The court was unable to locate in the record any document so titled, however.[5]  In her response plaintiff further states "there are numerous material facts in dispute which require presentation to a jury . . . [m]ore specifically, Plaintiff would show the material facts stated below." That statement is followed by twenty-nine numbered paragraphs which discuss certain issues of fact, with

---

[3]  Plaintiff identifies the deposition of Genie Millhouse as Exhibit B (plaintiff also identifies this deposition, evidently in error, as Exhibit F).  The deposition of Ms. Millhouse was filed in support of plaintiff's response to defendant's motion to strike, however, not the motion for summary judgment.  Although not properly filed in connection with the instant motion, because this exhibit is already part of the court record and could readily be found, the court has considered it. Exhibit C (Clifford Blackmon deposition), Exhibit D (Kitty Hendershott deposition), Exhibit E (excerpt of Hendershott declaration), and Exhibit F (Marie Giles deposition) were also identified in the response to the motion for summary judgment but were not filed with the response; the court made a cursory search but did not locate them elsewhere in the record.  Additionally, although certain excerpts from declarations made by Clifford Blackmon and Kitty Hendershott were filed in connection with plaintiff's response to defendant's motion to strike, they do not appear to be the excerpts referenced in the instant response.  Finally, plaintiff cites excerpts from the Matthew Townsend declaration but the excerpts were not filed with plaintiff's response and they do not appear to be elsewhere in the court record.

[4]  The court notes that counsel's difficulties with electronic filing in this case are nothing new for her. To the court's knowledge, in at least two other cases it has been necessary to correct and instruct counsel repeatedly with respect to proper filing procedures, even to the point of requiring counsel to take additional training on the use of the electronic docketing system.  See Streeter v. City of Pensacola, 3:05cv286/MCR, and Hyatt v. LC Industries, Inc., 3:06cv64/MCR. With respect to this case alone, chambers staff spent many hours attempting to decipher counsel's improperly titled and/or linked filings or to locate exhibits that were referenced but, as it turns out, were never actually filed. The hours expended in this effort, which were necessitated at least in part by Ms. Scoon's apparent inability to comply with the requirements for using the court's electronic docketing system "CM/ECF"), were hours wasted.  At this juncture, the court's patience in dealing with Ms. Scoon's wholly unsatisfactory filing practices has been more than simply tried; it has been depleted.  If counsel's performance does not improve immediately and significantly, the court will feel compelled to order her to undergo further training on CM/ECF or it may be forced to impose other sanctions.

[5]  Although, in plaintiff's "Motion to Respond to Defendant's Motion to Strike and or Respond to Plaintiff's Response to Defendant's Motion for Summary Judgement" (doc. 32), plaintiff discusses specific paragraphs of defendant's statement of facts which she contends are disputed, this document was not filed in connection with defendant's motion for summary judgment.  Rather, as the title indicates, it was filed in connection with defendant's motion to strike.

citations to the record.  The court might have taken this section as plaintiff's separate statement of disputed material facts (even though it is not appropriately identified) but for plaintiff's declaration on the final page of her response "that she disputes many of the material allegations in Defendant's Statement of Facts Relied Upon in Support of Federal Defendant's Motion for Summary Judgment.  In particular, Plaintiff disputes paragraphs 2, 3, 4, 5, 7, 10, 11, 13, 14, 15, 21, 23, 34, 35, 36, 37, 38, 39, 42, 44, 45, 46, 48, 49, 52, 53, 55, 58, 59, 60, 66, 67, 68, 70, 71, 72, 81, 82, 83, 86, 88, 91, 94, 95, 96, 100, 101, 102, 103, 108, 111, 112, 114, 115, 119, 120, and 122."  Plaintiff offers no discussion and makes no other reference to these paragraphs or their contents in her response.  She concludes her response by stating that should the court disagree with her argument that defendant failed to file an acceptable statement of undisputed facts as required by Fed.R.Civ.P. 56, she will file "a more specific Statement of Plaintiff's Contest of the Undisputed Facts [ ] prior to the Court's advisement date of November 1, 2007."  Although the court rejected plaintiff's argument that defendant's statement of facts should be stricken, plaintiff never filed a "more specific" statement within the time allotted nor did she seek additional time in which file such a statement.

The court has neither the inclination, time, nor ability to divine from her chaotic response plaintiff's intentions with respect to her statement of disputed material facts, much less definitively determine which facts plaintiff claims are disputed or the factual basis for any dispute.  Furthermore, the court is under no obligation to liberally construe the submissions of a party who is represented by counsel to determine just what her arguments are regarding disputed facts, much less comb through the record in an effort to find the evidentiary support for those arguments.  In short,  based on plaintiff's confusing response and her failure to submit any other appropriate statement of disputed facts within the time permitted, the court concludes she has not presented a statement of disputed facts that complies with N.D.Fla.Loc.R. 56.1(A).  Accordingly, the court deems admitted by plaintiff the material facts set forth in defendant's statement of undisputed facts. N.D.Fla.Loc.R. 56.1(A).

The court next concludes that plaintiff has failed to come forward with sufficient

evidence to preclude summary judgment in defendant's favor.  As outlined above, the only evidence of record to which plaintiff can point to show disputed factual issues is her own affidavit – upon which she relies heavily – as well as the deposition of Ms. Millhouse and a few references to defendant's exhibits.   Although it is axiomatic that at summary judgment the court must view evidence in the light most favorable to the non-moving party, this is true only to the extent that the non-moving party has actually proffered evidence controverting the moving party's assertion that no material issue of fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Plaintiff's affidavit, and the unsubstantiated allegations it contains, as well as Ms. Millhouse's testimony and the minor references by plaintiff to defendant's exhibits, are insufficient to controvert defendant's substantial proof reflecting no racial discrimination or retaliation in defendant's refusing to grant plaintiff incentive pay for eleven months, rejecting plaintiff's demand to make the incentive pay effective retroactively once it was awarded, or failing to promote plaintiff.   Moreover, even if the EEO settlement agreement did not encompass plaintiff's present hostile work environment/harassment claims, she does not dispute that these claims were not administratively exhausted and it appears they were not.  In any event, the evidence before the court is not sufficient to show an issue of fact as to whether plaintiff was subjected to a hostile work environment or harassment.

For all of the reasons stated above, as well as those cited in more detail by defendant in its motion for summary judgment (doc. 23) and its reply to plaintiff's response in opposition (doc.  31), the court concludes that defendant is entitled to judgment as a matter of law.[6]  See Celotex Corp., 477 U.S. at 322.  Defendant's motion for summary judgment is therefore GRANTED.

Accordingly, it is hereby ORDERED:

1.     The motion for summary judgment filed by defendant Donald C. Winter, Secretary Department of the Navy (doc. 23) is GRANTED. Plaintiff's claims are

---

[6]  The court notes that based on the available record it would reach these conclusions even if it had found that plaintiff's response contained a statement of disputed materials facts that complied with Local Rule 56.1.

DISMISSED, with prejudice.

      2.     Consistent with this order, the clerk of court is directed to enter summary judgment in favor of defendant.  Plaintiff shall take nothing further by this action and hence goes without day.

      3.     Costs shall be taxed against plaintiff.

      DONE and ORDERED this 2nd day of September, 2008.


                                  s/ *M. Casey Rodgers*
                                  **M. CASEY RODGERS**
                                  **UNITED STATES DISTRICT JUDGE**